**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JUAN BURRELL,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **09 C 2221** |
| | ) | |
| **PATRICK DONAHOE, Postmaster** | ) | |
| **General, U.S. Postal Service,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**

Former mail carrier Juan Burrell contends he was terminated because he was the victim of retaliation after he filed EEOC complaints based on alleged racial discrimination.  The Postal Service, on the other hand, asserts that Mr. Burrell was discharged due to extensive misconduct on the job.  The Postal Service's motion for summary judgment is before the court.  For the following reasons, the motion is granted.

**I.      Background**

**A.      Mr. Burrell's Affidavit**

Mr. Burrell submitted an affidavit in support of his opposition to the Postal Service's motion for summary judgment.  At his deposition, he declined to specify what his supervisors did that was discriminatory or improper, repeatedly stating, "I do not recall."  He also testified that he did not remember any details about the disciplinary actions taken against him.  His memory dramatically improved, however, when preparing his affidavit, which sets forth his detailed recollection of events.

The Postal Service seeks to strike the affidavit.  It is well established that, "as a general rule, a party may not create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony in the absence of newly-discovered evidence or the unmistakable need to clarify prior ambiguous statements."  *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996).  Mr. Burrell acknowledges this general rule but claims that he was not required to answer "generic questions at his deposition that had no specificity and were not accompanied by any follow up questions or attempts to refresh his recollection."

The court has reviewed the portions of Mr. Burrell's deposition transcript provided by the parties.  It agrees with the Postal Service that the Postal Service's counsel asked straightforward, direct questions and had no duty to repeat questions or follow up after Mr. Burrell unequivocally stated that he had no recollection.  Indeed, had counsel done so, the court is confident that Mr. Burrell's counsel would have objected.  The court finds that the version of events set forth in Mr.

Burrell's affidavit is inadmissible because it contradicts answers given during his deposition. Thus, the court will not consider the affidavit to the extent that it is at odds with Mr. Burrell's deposition. With that understanding, the court turns to the facts.

**B.    Facts**

**1.    Mr. Burrell's Disciplinary Record**

The United States Postal Service employed plaintiff Juan Burrell, an African-American male, as a flex mail carrier from approximately January of 2005 to September of 2007, and as a full-time mail carrier from approximately September of 2007 to April of 2008. Mr. Burrell worked at the Berwyn, Illinois, Post Office for the entire duration of his employment, exclusively working under postmaster William Ruona, and several supervisors, including Joseph Juarez, Ben Wright, Richard Rogers, Lee Junios, Jack Heaney, Ed Kalina, Marcus Neats, Lou Caprio, and Evelyn Blankenship. Customer service supervisors, including Mr. Wright, Mr. Rogers, and Mr. Juarez, were responsible for delivery operations and day-to-day supervision of subordinate employees. Postmaster Ruona was also responsible for day-to-day employee supervision.

During Mr. Burrell's time at the post office, he was disciplined multiple times. On June 11, 2005, supervisor Joseph Juarez issued a letter of warning for failure to follow instructions and for leaving mail unsecured overnight on the dock of the Berwyn Post Office. The union filed a grievance on Mr. Burrell's behalf and the parties agreed that the warning would be removed from Mr. Burrell's records if he did not incur any further discipline in the next six months.

Approximately one month later, on July 12, 2005, Mr. Juarez (with the approval of Postmaster Ruona) gave Mr. Burrell a seven-day suspension after he left mail on a customer's porch instead of placing it in the mailbox. The union filed a grievance, after which the suspension was rescinded and replaced with a "discussion."

Less than a week later, Mr. Burrell was the subject of a complaint by a disabled customer, who asserted that her mail had been left on her porch instead of in her mailbox. On July 16, 2005, Mr. Juarez (with the approval of Postmaster Ruona) issued a fourteen-day suspension for "failure to follow instructions and improper delivery of mail (throwing mail on customer's porch)." The union again filed a grievance, after which the fourteen-day suspension was replaced with a seven-day suspension that was to be removed from Mr. Burrell's file if he incurred no additional discipline for a year.

This did not happen, as the disabled mail customer who had previously complained that Mr. Burrell threw mail on her porch instead of leaving it in the mailbox complained again after Mr. Burrell went to her home to demand that she withdraw her prior complaint. After investigation, on September 8, 2005, Mr. Burrell received another fourteen-day suspension from Mr. Juarez with Postmaster Ruona's approval. The union once again grieved the discipline, after

which it was agreed that the discipline would be removed from Mr. Burrell's record if he made it through a full year with no discipline.

On October 22, 2005, Mr. Juarez (with the approval of Postmaster Ruona) issued a notice of removal for failure to follow instructions, and failure to perform assigned duties in a safe manner. This discipline was based on Mr. Burrell's failure to complete deliveries and collections on time. In addition, according to Mr. Juarez, Mr. Burrell had improperly jumped over equipment in the Post Office's workroom in an unsafe manner.

On October 27, 2005, supervisor Ed Kalina issued another notice of removal for unacceptable job performance after Mr. Burrell took too long to complete his route and did not fill out the documentation required for the use of additional time. The union filed a grievance and Mr. Burrell's discipline for the October 22, 2005, and October 27, 2005, incidents were combined into a single thirty-day suspension.

On June 7, 2006, Mr. Burrell received written notice that pursuant to the collective bargaining agreement between the Postal Service and the union, he was being placed in off-duty status, without pay. This discipline followed an incident on Mr. Burrell's route when he was accompanied by supervisors Joseph Juarez and Lou Caprio to investigate a customer problem on Mr. Burrell's route. The two men accompanied Mr. Burrell, who does not appear to have been happy to have two supervisors with him. According to Mr. Juarez and Mr. Caprio, after Mr. Juarez told Mr. Burrell to return to his vehicle because he was yelling in front of customers, Mr. Burrell yelled, "What if I just knock you out? Knock you on your [expletive deleted] and kick the [expletive deleted] out of you!" Df. Exs. 115 & 6. The incident was documented by Mr. Caprio shortly after it happened at the Post Office's request, and the report was kept by the Post Office in the regular course of its business. Mr. Burrell does not dispute that he received the notice but asserts that Mr. Juarez and Mr. Caprio's written statements about the incident contain hearsay and are improper because they are undated.

On July 10, 2006, Mr. Caprio issued a notice of removal to Mr. Burrell. The notice for unacceptable conduct detailed the events of June 7th and concluded that non-pay emergency status was warranted because of Mr. Burrell's "uncontrollable behavior and threat of violence." Df. Ex. 18. It also memorialized the pre-disciplinary hearing and investigation performed by the Post Office. The union filed a grievance. After arbitration, Mr. Burrell's removal was reduced to a long-term suspension with no backpay.

## 2.    The Last Chance Agreement

Mr. Burrell returned back to work on December 21, 2006. His next notice of removal was issued by supervisor Lee Junious on March 15, 2007, for an unauthorized deviation (failure to deliver his route as instructed, untimely completion of his route, and having lunch at an unauthorized location). The union again filed a grievance. Mr. Burrell entered into a "last chance agreement" which resolved the grievance by reducing the removal to a thirty-day

suspension. The last chance agreement laid out several criteria with which Burrell was required to comply, including a provision that more than four unscheduled absences within the six month period would constitute a violation of the last chance agreement.

The Post Office uses a "Form 3971" for requests to schedule absences. Its Employee and Labor Relations Manual details procedures for requesting leave and states that generally, leave must be approved in advance except in the emergency or an unexpected illness or injury. Supervisors are tasked with reviewing medical documentation in support of requests for leave. If an employee is injured on the job and files the appropriate form and adequate medical documentation to support a leave request, his absence will not be counted toward discipline even if it is unscheduled.

On August 24, 2007, October 10, 2007, October 22, 2007, and October 23, 2007, Mr. Burrell had unscheduled absences from work. On November 13, 2007, he expanded his street time without authorization.[1] On November 17, 2007, Mr. Burrell had another unscheduled absence, leaving him with a total of five unscheduled absences in violation of the last chance agreement.

On November 19, 2007, supervisor Richard Rogers (with the concurrence of supervisor Jack Heaney) issued a notice of removal to Mr. Burrell for "Violation of Last Chance Agreement as Evidenced by Your Expansion of Your Street Time." On November 21, 2007, the postal service rescinded the November 19th notice of removal. However, on December 20, 2007, supervisor Evelyn Blankenship issued a notice of removal with two charges: (1) violation of last chance agreement as evidenced by the failure to maintain a regular schedule; and (2) violation of last chance agreement as evidenced by expansion of street time. This notice covered Mr. Burrell's unscheduled absences between August of 2007 and November of 2007 and his expansion of street time on November 13, 2007. The union filed a grievance. Unlike prior grievances which resulted in a retraction of all or part of the discipline, this time things did not go well for Mr. Burrell. A dispute resolution team considered and denied the grievance and on April 17, 2008, Mr. Burrell received a decision stating that he would be removed from the Postal Service.

### 3. Other Postal Employees

On November 13, 2007, the day Mr. Burrell expanded his street time without authorization, another employee, Robert Slackert, expanded his street time by request and was not disciplined.

Francois Leach, an African American mail carrier, testified at his deposition that Mr. Juarez called him and Mr. Burrell "brothers" and made comments about them eating chicken

---

[1] The parties do not specify what "expanding street time" means but the term appears to refer to the untimely completion of a delivery route.

with hot sauce. Leach Dep. at 36. He also testified at his deposition that Mr. Juarez occasionally referred to him and Mr. Burrell using the "n" word.[2] The Postal Service never required Mr. Leach to sign a last chance agreement even though he was disciplined more than thirty times for unauthorized use of overtime, failure to follow instructions, deviating from route, misuse of penalty overtime, excessive use of leave, and tardiness. Mr. Leach filed an EEOC complaint in 2007.

On October 19, 2006, Caucasian postal employee George Kozdras received a notice of removal for, among other things, drinking alcoholic beverages while on duty and driving a postal vehicle. He entered into a last chance agreement. On February 28, 2008, Mr. Kozdras received another notice of removal for 168 hours of unauthorized absences from work and unscheduled sick and emergency annual leave. The record shows that the Postal Service terminated him in 2009 for violating his last chance agreement after the union withdrew its grievance regarding the violation.

Another postal employee, Gail Remiyas, received a last chance agreement in 2003 for failure to maintain a regular schedule. She violated the agreement in 2005, and after the union filed a grievance, her last chance agreement was extended to 2006 and the removal was replaced with a thirty-day suspension. She violated the agreement again in 2007 by failing to maintain a regular scheduled route and was removed later that year.

### 4.    Mr. Burrell's EEOC Complaints

Mr. Burrell filed three separate EEOC complaints during his tenure at the Post Office: one in 2005, one in 2006, and one in 2008. The filing closest to Mr. Burrell's termination occurred approximately two months after June 7, 2006 (the date of the "knock you out" yelling incident), was directed at Postmaster Ruona and Mr. Juarez, and claimed that Mr. Juarez had called him a racially derogatory epithet. *See* Df. Ex. 4. On February 19, 2008, Mr. Burrell filed another complaint alleging that Postmaster Ruona and Mr. Rogers retaliated against him on November 13 and 20, 2007. *See id.* at Ex. 28. As noted above, Mr. Rogers had issued a notice of removal on November 19, 2007, based on Mr. Burrell's violation of the last chance agreement by expanding street time. In his complaint, Mr. Burrell alleged that weather conditions were poor and his mail load was heavy on the date in issue, and asserted that other mail carriers also

_____

[2] The Postal Service also asserts that Mr. Leach "also heard plenty of offensive language" from Mr. Burrell regarding many of his supervisors. Specifically, according to the Postal Service, Mr. Leach testified that Mr. Burrell called Mr. Juarez a "bean eating MF," "fat ass," "sloppy" and "lazy," called Mr. Wright a "wannabe white, a Hyde Park phoney" and called Mr. Richards, a "wannabe pimp, think he can [expletive deleted] every woman that's at the post office and he basically ain't, you know some westside trash." Dkt. 74 at Page ID#437. The basis for admission of these hearsay statements is unclear and, in any event, the Postal Service did not attach the quoted portions of Mr. Leach's deposition to its submission. Thus, the court will not consider the comments.

completed their rounds after their regularly scheduled time. The claim of discrimination associated with November 20th appears to match up with the November 19, 2007, notice of removal that was later withdrawn and replaced with the December 20, 2007, notice of removal that added an additional violation.

Postmaster Ruona was aware of the EEOC complaints, but supervisors Evelyn Blankenship and Richard Rogers were not. On December 5, 2008, an administrative law judge denied Mr. Burrell's request for a hearing as a sanction for failure to cooperate, prosecute, and follow orders issued in the EEOC case. Mr. Burrell's complaint was subsequently remanded to the Postal Service for a final agency decision on the merits. On January 9, 2009, the Postal Service issued a finding of no retaliation. On April 10, 2009, Burrell filed this complaint challenging his termination, alleging that the Postal Service retaliated against him because he filed EEOC ccomplaints asserting race based discrimination.

## II. Discussion

### A. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992). A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Id.*

To successfully oppose a motion for summary judgment, however, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, it must demonstrate that a genuine issue of fact exists. *See id.* at 587; *see also* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" the court may: "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or (4) issue any other appropriate order").

The determination as to what facts are "material" in employment discrimination cases depends upon the substantive law of employment discrimination, and the burden of proof applicable under the law. *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922 (7th Cir. 1988). When considering motions for summary judgment in discrimination cases, the court applies these criteria with added rigor because the matters of intent and credibility are crucial issues. *See Sarsha v. Sears, Roebuck, & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

### B.    Retaliation

Mr. Burrell first claims that he was terminated in April 2008 to retaliate against him for filing EEOC complaints in 2006 and 2008. A plaintiff may establish a prima facie case of retaliation using either the direct or indirect methods. *Coleman v. Donahoe*, No. 10-3694, — F.3d —, 2012 WL 32062, at *18 (7th Cir. Jan. 6, 2012). Mr. Burrell contends that he is entitled to a trial based on both methods of establishing retaliation.

To avoid summary judgment on a retaliation claim under the direct method, Mr. Burrell must point to evidence from which a jury could conclude that "(1) [he] engaged in activity protected by Title VII; (2) the Postal Service took an adverse employment action against [him]; and (3) there was a causal connection between [his] protected activity and the adverse employment action." *Id*.; *see also Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011). Alternatively, he can survive summary judgment under the indirect burden-shifting method if he shows that he: (1) engaged in statutorily protected activity; (2) performed his job satisfactorily; (3) suffered an adverse employment action; and (4) was treated less favorably than other similarly situated employees who did not engage in protected activity. *Dear v. Shinseki*, 578 F.3d 605, 609 (7th Cir. 2009).

If Mr. Burrell sets forth a prima facie case of discrimination under either method, the Postal Service must then articulate a legitimate, nondiscriminatory reason for its decision to terminate him. *See Griffin v. Sisters of St. Francis, Inc.*, 489 F.3d 838, 844 (7th Cir. 2007). If it does so, Mr. Burrell must then produce evidence supporting an inference that the proffered was pretextual. *Id*.

### 1.    Direct Method

It is undisputed that Mr. Burrell's EEOC charges and termination satisfy the first two elements of the prima facie case for the direct method. *See Silverman v. Bd. of Educ. of City of Chicago*,, 637 F.3d at 740 (filing an EEOC charge is an "obvious form of statutorily protected activity"); *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007) (termination is an adverse action for Title VII purposes). The court thus must consider whether Mr. Burrell's EEOC complaints and his termination are causally connected.

To demonstrate a causal link under the direct method, Mr. Burrell must identify "direct evidence of discriminatory intent (such as an admission) or enough circumstantial evidence to allow a rational jury to infer that discriminatory intent motivated his firing." *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 708 (7th Cir. 2011). Circumstantial evidence may include suspicious timing; ambiguous statements; behavior or comments directed at others in the protected class; and evidence that similarly situated employees outside the protected class received systematically better treatment. *Id*. at 708. Whatever circumstantial evidence a plaintiff presents "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

As discussed above, Mr. Burrell's alleged memory lapse during his deposition, followed by a drastic recovery of his recollection post-deposition and the drafting of a detailed affidavit addressing matters raised during the deposition, means that the court will not consider his affidavit or the corresponding paragraphs in his Rule 56.1 statement. The Postal Service correctly notes that this leaves Mr. Burrell with virtually no support for his claim of retaliation based on the direct method.

Supervisor Richard Rogers (with the concurrence of supervisor Jack Heaney) issued Mr. Burrell's penultimate notice of removal. Supervisor Evelyn Blankenship issued the final removal that expanded and replaced Mr. Rogers' notice of removal. No evidence in the record indicates that any of these people were aware of Mr. Burrell's EEOC complaints. This dooms any hope of establishing a causal connection. *See Stephens v. Erickson*, 569 F.3d 779, 788 (7th Cir. 2009) ("Clearly, a supervisor cannot retaliate against an employee for a protected activity about which he has no knowledge").

Mr. Burrell nevertheless asserts that Postmaster Ruona was the ultimate decisionmaker and knew about the EEOC complaints. In support, Mr. Burrell contends that after he signed the last chance agreement, Postmaster Ruona told him, "Good luck with your new job because you won't be working at the Post Office." This statement is inadmissible as it was included in Mr. Burrell's affidavit, which has been stricken. In any event, the alleged statement is not a smoking gun for the direct method because it cannot be fairly read as referring to the EEOC charges and any conclusion that Postmaster Ruona was threatening Mr. Burrell based on the charges would be entirely speculative. Next, Mr. Burrell contends that Mr. Juarez made discriminatory comments. Mr. Juarez was not the decisionmaker or involved in the determination to terminate Mr. Burrell. In any event, his alleged comments do not have any relation to the EEOC charges. Thus, Mr. Burrell has failed to establish the necessary causal link between his EEOC complaints and his termination and cannot survive summary judgment using the direct method.

## 2.      Indirect Method

To establish a prima facie case using the indirect method, Mr. Burrell must show that: (1) he is a member of a protected class, (2) he was performing his job satisfactorily, (3) he was fired, and (4) the Postal Service treated a similarly situated individual more favorably. *Dear v. Shinseki*, 578 F.3d 605, 609 (7th Cir. 2009). The record shows that Mr. Burrell simply cannot meet the second and fourth prongs. First, Mr. Burrell's collection of disciplinary infractions means that any claim that he was satisfactorily performing his job cannot pass the straight face test. During an approximately two and one half year period, Mr. Burrell received two warnings for leaving mail unattended and threatening another mail carrier, a seven-day suspension for leaving mail on a porch, two fourteen-day suspensions for leaving mail on a porch and threatening a customer, and four notices of removal for failure to follow directions, unacceptable job performance, unacceptable conduct, and an unauthorized deviation from his route.

Mr. Burrell claims that Mr. Juarez's use of the "n word" and his description of Mr. Burrell and another African American mail carrier as "brothers" means that discipline meted out by Mr. Juarez is suspect. This argument is unavailing because Mr. Juarez was one of many supervisors who found that Mr. Burrell had failed to perform satisfactorily. In any event, "[r]acial epithets or stray remarks may be direct or circumstantial evidence of intentional discrimination if they are sufficiently connected to the employment decision, *i.e.*, made by the decisionmaker, or those who influence the decisionmaker, and made close in time to the adverse employment decision." *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 272 (7th Cir. 2004). Mr. Juarez was not a decisionmaker and the alleged remarks were not made close in time to the final notices of removal that led to Mr. Burrell's termination.

Mr. Burrell also contends that the Postal Service treated other postal workers who did not engage in protected activity more favorably. The court finds that the other employees are not similarly situated. *See Coleman v. Donahoe*, 2012 WL 32062, at *6 ("Similarly situated employees must be directly comparable to the plaintiff in all material respects, but they need not be identical in every conceivable way. We are looking for comparators, not clones." (internal citations and quotations omitted).

First, the record does not indicate Robert Slackert's race or whether he filed an EEOC complaint. Regardless, he was not terminated after he expanded his street time without authorization a single time. This one infraction pales in comparison with Mr. Burrell's extensive history of disciplinary issues.

Second, Francois Leach, an African American mail carrier, was never required to sign a last chance agreement even though he was disciplined more than thirty times for unauthorized use of overtime, failure to follow instructions, deviating from route, misuse of penalty overtime, excessive use of leave, and tardiness. Critically, Mr. Leach filed an EEOC complaint in 2007. "In adjudicating claims under federal employment discrimination statutes, a court does not sit as a super-personnel department, second-guessing an employer's business decision as to whether someone should be fired or disciplined because of a work-rule violation." *Coleman v. Donahoe*, 2012 WL 32062, at *21 (internal quotations omitted), *quoting Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006). The court thus will not consider why Mr. Burrell was terminated while another mail carrier with a hefty number of infractions was not. *See id.* The only finding it need make is that both men filed EEOC complaints, so Mr. Burrell cannot contend that Mr. Leach was treated better because he did not engage in protected activity.

The final allegedly comparable employees are Caucasian postal workers George Kozdras and Gail Remiyas. Mr. Kozdras consumed alcoholic beverages while driving his postal vehicle and Ms. Remiyas received a last chance agreement in 2003 for failure to maintain a regular schedule. Both employees received extensions of their last chance agreements and were ultimately fired. To the extent that Mr. Burrell is claiming that he, too, should have been given a second last chance, no evidence links the decision to not provide a second last chance to the filing of an EEOC complaint. Moreover, the disciplinary histories for Mr. Kodras and Ms.

Remiyas are different than Mr. Burrell's history and they did not have the same supervisors.  See *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 834 (7th Cir. 2005).  Finally, Mr. Kodras and Ms. Remiyas were both terminated and neither appears to have filed an EEOC complaint.  Thus, their disciplinary records fail to show that the Postal Service treated similarly situated employees who did not engage in protected activity better than it treated Mr. Burrell.

Mr. Burrell, therefore, cannot establish a prima facie case of discrimination under the indirect method.  Accordingly, the Postal Service is entitled to summary judgment and the court need not consider the parties' remaining arguments.

**III.     Conclusion**

For the above reasons, the Postal Service's motion for summary judgment [70] is granted. The clerk is directed to enter a Rule 58 judgment and terminate this case from the court's docket. The court also extends its thanks to appointed counsel, Jacie C. Zolna, of Myron M. Cherry & Associates, and commends him for his zealous and skilled representation of Mr. Burrell throughout the pendency of this case.

DATE: February 2, 2012

Blanche M. Manning
United States District Judge

-10-